DAVIS, Judge.
In this consolidated appeal, E.E.A., the natural mother, challenges two final judgments that terminated her parental rights to J.H.,.M.H., and D.A. E.E.A. is a thirty-nine-year-old woman who is developmentally delayed and suffers from numerous other disorders including a long-standing, chronic substance abuse problem. She was determined to be incompetent in these proceedings, and an attorney ad litem was appointed on her behalf. For the reasons explained below, we reverse.
In 1995, prior to the birth of D.A. and prior to the family’s involvement with the Department of Children and Family Services (the Department), E.E.A. and her two children went to live with E.E.A.’s mother (the grandmother). It does not appear that E.E.A. remained there long, but the children stayed. In 1998, after the birth of D.A., the Department became involved with E.E.A. regarding the care of the newborn child, whom the Department ultimately placed, along with his two siblings, with the grandmother. E.E.A. consented to an adjudication of dependency as to all three children. The children continued to live with the grandmother under the supervision of the Department until 2000, when the Department sent all three children to South Carolina to live with the father of the two older children. The reports filed with the court between 1998 and the 2000 move to South Carolina all concluded that the placement with the grandmother was appropriate, although it was not without problems. Because the grandmother had essentially raised the children, she was credited with the children’s generally good behavior, manners, and demeanor.
When, for a variety of reasons, the South Carolina placement did not work out, all three children were brought back to Florida and placed in foster care. It was upon the children’s return to Florida that the Department commenced the instant termination proceedings. During the nine-month period between the time of the children’s return (April 2001) and the date of the trial (January 14, 2002), the Department moved, the children numerous times, and the children were placed together only occasionally.
To grant a petition to terminate parental rights, the trial court must find that the Department proved the allegations supporting the termination of parental rights by clear and convincing evidence. In re C.W.W., 788 So.2d 1020 (Fla. 2d DCA *1252 2001). Additionally, the Department must establish that termination of parental rights is the least restrictive means of protecting the child from harm. Id.
In its first amended petition for termination of parental rights, the Department alleged grounds for termination pursuant to subsections (b), (c), (e), and (g) of section 39.806(1), Florida Statutes (2001). Although the multiple grounds were raised by the Department, the trial court found that the Department failed to prove the allegations made under subsections (b), (e), and (g). However, the court found that the Department had proved its case as to subsection (c), which allows termination of parental rights “[w]hen the parent ... engaged in conduct toward the child or toward other children that demonstrates that the continuing involvement of the parent ... in the parent-child relationship threatens the life, safety, well-being, or physical, mental, or emotional health of the child irrespective of the provision of services.”
After reviewing the testimony before the trial court, we conclude that the trial court erred in finding that the Department established by clear and convincing evidence that the continuation of the parent-child relationship would threaten the well-being of these children. There is no record evidence suggesting that the children were under any threat of harm due to the mother’s continued parental relationship with the children. In fact, the record evidence is to the contrary. The testimony included observations that the children loved their mother and that the visitations went well. The only apparent threat of harm these children have suffered results from the instability of their placement, which, in turn, is the direct result of the Department’s placement of the children with several foster care providers rather than working with the grandmother to return the children to her care.
From February 1998, when these children were placed under supervision of the Department while residing with the grandmother, until the children were sent to South Carolina in 2000, there was no indication that the mother in any way posed a threat to the well-being of the children even though she maintained the parent-child relationship. All the testimony indicated that the children were in a stable, caring placement provided by the grandmother. They had contact from time to time with their mother but were never in danger of harm by her. Although the trial court was correct to find that the Department established that the mother would not be able to be the custodial parent of these children, that is not the ground for termination that the court found the Department had shown pursuant to section 39.806(l)(c).
Likewise, as in C.W.W., the Department has failed to establish that termination was the least restrictive alternative. The testimony indicates that the Department did nothing to pursue the possibility of the grandmother once again caring for the children. Although the trial court found that she had the “burden of caring” for the mother, there is nothing in the record to support this finding. As to whether the grandmother had stable housing, the record indicates that the case worker did not seek to determine her housing arrangements because the Department was not considering her for possible placement. The trial court also exercised its “hindsight” and questioned whether the prior placement of the children with the grandmother was “a good shelter placement.” However, the Department’s regular reports to the court stated that the placement was. “appropriate,” and the Department never petitioned to change that *1253 placement. The issues the case worker raised at the termination trial regarding the earlier placement were speculative and apparently had not been important enough at the time of the placement to merit further investigation or follow through. Based on the facts of this ease, we conclude that there was an option available that was less restrictive than termination.
Since the Department failed to prove the allegations for termination by clear and convincing evidence and failed to establish that termination was the least restrictive alternative, the orders granting the termination of parental rights must be reversed.
Reversed and remanded for further proceedings consistent with this opinion.
COVINGTON[1] and KELLY, JJ., Concur.