DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**GUARDIAN AD LITEM PROGRAM,**
Appellant,

v.

**M.H.**, the Father, and **W.S.**, the Mother,
Appellees.

No. 4D15-3195

[February 17, 2016]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Susan Lebow, Judge; L.T. Case No. 2014-1790 CJ DP.

Laura E. Lawson, Sanford, for appellant.

Jeffrey B. Levy of the Law Offices of Jeffrey B. Levy, P.A., Fort Lauderdale, for appellee W.S.

Denise E. Kistner of the Law Offices of Denise E. Kistner, P.A., Fort Lauderdale, for appellee M.H.

CONNER, J.

In this case, we are called upon to determine whether proof of a guilty plea or conviction in a criminal proceeding is required for termination of parental rights under section 39.806(1)(m), Florida Statutes (2014). Section 39.806(1)(m) allows for termination of parental rights of an offending parent when a child is conceived by the offending parent committing a sexual battery upon the other parent. The trial court required proof of a plea of guilty or a conviction of sexual battery by the father as a ground to support termination of parental rights under section 39.806(1)(m). Because the trial court imposed an element not required by law, we reverse for further proceedings.

*Factual Background and Trial Court Proceedings*

K.S. is a three-year-old boy. K.S. was conceived when M.H., who was married to the child's maternal grandmother, had sex with his sixteen-year-old stepdaughter, W.S., the child's mother, in the family home in

Kentucky. K.S.'s mother was uninvolved as a parent, began using drugs, and eventually moved out of the family home in Kentucky. The child continued to live with M.H. and the grandmother. M.H. actively engaged in raising and supporting K.S. as his son. Two years after K.S. was born, the maternal grandmother separated from M.H. and relocated to Florida, taking K.S. with her. W.S., the mother, continuing to be uninvolved with K.S., remained in Kentucky. M.H. did not know the whereabouts of the grandmother and K.S. after they moved to Florida, until after dependency proceedings were initiated to protect K.S.

In April 2014, within a few weeks of arriving in Florida, K.S. was sheltered by the Department of Children and Families ("DCF"). At the time of the initial proceedings, the father was listed as "unknown." K.S. was adjudicated dependent and placed in foster care with DCF. A guardian ad litem ("the GAL") was appointed early on in the proceedings.

Upon learning that K.S. was placed in foster care, M.H. contacted DCF, claiming to be the father. DCF arranged a paternity test, confirming M.H. is the biological father. M.H. promptly sought to obtain information about K.S. and arrange for visitation, and promptly sent $100 towards the care of K.S. However, the court ordered no contact between M.H. and K.S. due to the fact that M.H. conceived the child with a minor.

In December 2014, the GAL filed a petition for termination of parental rights ("TPR") so that K.S. could be placed for adoption. The petition alleged that the mother abandoned K.S. and made no meaningful efforts to communicate with him or participate in any visits. The petition recognized M.H. as the father, but alleged that M.H. also abandoned K.S. and asserted that his marginal efforts to communicate with K.S. were incidental and insufficient to establish or maintain a positive relationship with the child. The petition further alleged that pursuant to section 39.806(1)(m), K.S. was conceived as a result of a sexual battery and that it is in the best interest of the child for M.H.'s rights to be terminated.

The mother did not appear for the TPR trial and a default consent was entered against her.

The grandmother testified at trial in regards to the relationship between M.H. and K.S., and stated she would not have any concerns for K.S.'s safety or wellbeing if he were placed in M.H.'s care. She testified that, while she lived with him, M.H. provided for K.S., who called him "daddy." He bought him diapers, clothes and food, and he spent time with K.S., entertained him, and never hurt him. In regards to M.H.'s sexual encounter with her daughter, the grandmother testified that her daughter

was almost seventeen at the time and consented to the encounter.

M.H. testified that he was married to the grandmother and they lived together with her seven children, including W.S., in the family home. He testified that to his knowledge, W.S. was sixteen when they engaged in sexual intercourse, after which she became pregnant with K.S. He testified that he did not have sexual relations with any of the other children. He acknowledged that when he had sex with W.S., he felt bad about it, but "temperatures raised and then [he] didn't think about it." He confirmed that this was an extraordinary lack of judgment on his part and that it did not represent his general sexual desires. M.H. testified that he first found out about the dependency case when W.S.'s aunt told him about it. He testified that he then contacted ChildNet and informed them that he was K.S.'s father. M.H. testified that he is not a citizen of the U.S., but has a pending immigration application, and that he has not been arrested and is not facing deportation. He confirmed that he has never been charged with any sexual battery offense.

After considering the evidence and the arguments, the trial court entered a final judgment dismissing the petition for TPR. The trial court made several findings upon clear and convincing evidence and found the testimony of the grandmother and M.H. to be credible. It found, pursuant to the grandmother's testimony, that when she and K.S. lived with M.H., K.S. called M.H. "dad," and M.H. provided for K.S.'s basic needs. The trial court found that when M.H. learned that K.S. was involved with DCF, he called and told DCF that he was the child's father and had been attending court hearings in Florida. The trial court found by clear and convincing evidence that M.H. was over the age of majority when he had sex with the mother, who was sixteen at the time. However, the trial court ruled in the final judgment that:

> The Court finds by clear and convincing evidence that the father committed the act described in Florida Statute 39.806(1)(m) that resulted in conception of the child, *but is unwilling to make a finding that a sexual battery on a minor was committed as defined by the criminal code.*

(emphasis added). Additionally, during the trial, the trial court noted on the record that it could not "make that leap into the criminal statutes."

The trial court also found that the GAL failed to prove by clear and convincing evidence that M.H. abandoned K.S. pursuant to section 39.806(1)(b). The trial court denied the petition for TPR as to both grounds alleged against M.H. As to W.S., the trial court noted that a default

3

consent to the petition was entered against her when she failed to appear at trial; however, it found that it could not grant the GAL's request to sever one parent's rights without severing the other parent's, and therefore denied the petition for TPR as to W.S. as well. In addition to finding no grounds to terminate parental rights, the trial court commented in the final judgment that it had not heard testimony regarding the manifest best interest of the child. The final judgment made no findings regarding whether TPR is the least restrictive means of protecting K.S. from harm.

The GAL gave notice of appeal.

*Appellate Analysis*

In a TPR case, appellate courts "will uphold the trial court's finding[s] '[i]f, upon the pleadings and evidence before the trial court, there is any theory or principle of law which would support the trial court's judgment.'" *J.M. v. Dep't of Children & Families*, 9 So. 3d 34, 37 (Fla. 4th DCA 2009) (internal quotation marks omitted) (quoting *In re Adoption of Baby E.A.W.*, 658 So. 2d 961, 967 (Fla. 1995)). In regards to the interpretation of statutes, however, the standard of review is *de novo*. *B.Y. v. Dep't of Children & Families*, 887 So. 2d 1253, 1255 (Fla. 2004).

"To grant a petition for termination of parental rights, the circuit court must find that [the petitioner] proved the allegations supporting termination by clear and convincing evidence." *In re G.C.*, 6 So. 3d 643, 648 (Fla. 2d DCA 2009) (citing *E.E.A. v. Dep't of Children & Family Servs.*, 846 So. 2d 1250, 1251–52 (Fla. 2d DCA 2003)). "The circuit court must first find grounds for termination of parental rights under section 39.806 and then must consider the manifest best interests of the child under section 39.810." *Id.* (citing *Rathburn v. Dep't of Children & Families*, 826 So. 2d 521, 523 (Fla. 4th DCA 2002)). "In addition, [the petitioner] must establish that termination of parental rights is the least restrictive means of protecting the child from harm." *Id.* (citing *E.E.A.*, 846 So. 2d at 1251–52).

On appeal, the GAL does not challenge the trial court's denial of termination of M.H.'s parental rights on grounds of abandonment. Instead, the appeal focuses on the argument that the trial court lacked the authority to deny its petition for TPR based on its unwillingness to make an unnecessary finding of criminal responsibility for sexual battery where it already made a finding that the father's conduct met the requirements of section 39.806(1)(m), Florida Statutes (2014). We agree.

Section 39.806(1)(m) provides:

**39.806 Grounds for termination of parental rights.—**
(1) Grounds for the termination of parental rights may be established under any of the following circumstances:

. . . .

(m) *The court determines by clear and convincing evidence that the child was conceived as a result of an act of sexual battery made unlawful pursuant to s. 794.011, or pursuant to a similar law of another state,* territory, possession, or Native American tribe where the offense occurred. It is presumed that termination of parental rights is in the best interest of the child if the child was conceived as a result of the unlawful sexual battery. A petition for termination of parental rights under this paragraph may be filed at any time. The court must accept a guilty plea or conviction of unlawful sexual battery pursuant to s. 794.011 as conclusive proof that the child was conceived by a violation of criminal law as set forth in this subsection.

§ 39.806(1)(m) (emphasis added). As can be seen, nothing in the statutory provision indicates the legislature intended that a determination of guilt (by plea or trial) under section 794.011, or any similar statute in another jurisdiction, by a criminal court is required to support a TPR under section 39.806(1)(m). If the legislature had intended such a requirement, it would have said so. We do not construe the requirement that a trial court must *accept* a guilty plea or conviction as conclusive proof of a violation of section 794.011 as an element *requiring* a guilty plea or conviction for TPR under that ground. Instead, we construe the last sentence of section 39.806(1)(m) to avoid the necessity of direct or circumstantial proof that the child was conceived as a result of conduct constituting a sexual battery under section 794.011, when a plea of guilty or a conviction as to such conduct is established.

The GAL argues there was clear and convincing evidence that K.S. was conceived as a result of M.H.'s conduct deemed unlawful pursuant to section 794.011(8)(a), Florida Statutes (2014),[1] as well as a similar

---

[1] Section 794.011(8)(a) provides:

(8) Without regard to the willingness or consent of the victim, which is not a defense to prosecution under this subsection, a person who

Kentucky statute. In this case, M.H. admitted to having sexual intercourse with the child's mother, his stepdaughter, once when she was sixteen years old, and that she became pregnant with K.S. thereafter. The trial court found, by clear and convincing evidence, that K.S. was conceived as a result of conduct proscribed by section 794.011(8)(a). Thus, we agree that the trial court improperly interpreted and applied section 39.806(1)(m) to the facts of this case and erred by determining that the GAL failed to prove sufficient grounds for termination of the father's parental rights under that statute.

We disagree with M.H.'s argument that the trial court did not err because it could be determined only by a criminal court proceeding that the child was conceived as a result of an act of sexual battery made unlawful pursuant to section 794.011 or a similar law of another state, citing *W.W. v. Department of Children & Families*, 811 So. 2d 791 (Fla. 4th DCA 2002), and *A.H. v. Department of Children & Families*, 63 So. 3d 874 (Fla. 1st DCA 2011). In *W.W.* and *A.H.*, both courts were addressing TPR based on a previous version[2] of section 39.806(1)(d)2., Florida Statutes, which authorized TPR when "the parent of a child is incarcerated in a state or federal correctional institution" and "[t]he incarcerated parent has been determined by the court to be . . . a sexual predator as defined in s. 775.21." § 39.806(1)(d)2., Fla. Stat. (2011). As pointed out in both decisions, the term "sexual predator," as defined in section 775.21, is a legal classification which results from written findings made by the sentencing court in a criminal case. *W.W.*, 811 So. 2d at 793; *A.H.*, 63 So. 3d at 875–76. For that reason, both courts held the determination of sexual predator status had to be made in a criminal proceeding and not a juvenile dependency proceeding. *W.W.*, 811 So. 2d at 795 (Farmer, J., concurring specially); *A.H.*, 63 So. 3d at 876–77. The underlying conduct to support the designation as a sexual predator requires a judicial determination by a plea or trial that comports with a burden of proof beyond a reasonable doubt. We perceive nothing in section 39.806(1)(m), Fla. Stat. (2014), that requires proof that the child was conceived as a

> is in a position of familial or custodial authority to a person less than 18 years of age and who:
>
> (a) Solicits that person to engage in any act which would constitute sexual battery under paragraph (1)(h) commits a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.

[2] The current version of section 39.806(1)(d)2., is similar to that quoted in this opinion; however, the words "in a state or federal correctional institution" are removed in the current version. *See* § 39.806(1)(d)2., Fla. Stat. (2015).

result of conduct constituting a sexual battery under section 794.011 by a plea or trial that comports with a burden of proof beyond a reasonable doubt.

Because the trial court determined there were no statutory grounds to support termination of M.H.'s parental rights, the court made no findings regarding the manifest best interests of K.S.[3] or whether TPR was the least restrictive means to protect K.S. from harm. We note that section 39.806(1)(m) provides for a presumption that TPR is in the best interest of the child if the child was conceived as a result of the unlawful sexual battery. Because of the presumption, to avoid TPR in this case, it is incumbent on M.H. to rebut the presumption. We express no opinion as to whether sufficient evidence was presented to rebut the presumption. Likewise, because the trial court made no findings regarding whether TPR is the least restrictive alternative to protect K.S. from harm, we also take no position regarding the evidence on that issue.

Having determined the trial court erred in its interpretation and application of section 39.806(1)(m), we reverse. We remand for the trial court to make appropriate determinations regarding whether TPR is in the manifest best interest of K.S. and whether TPR is the least restrictive means to protect K.S. from harm. The trial court has the discretion to determine what additional trial court proceedings are needed to afford the parties due process.

*Affirmed in part, reversed in part, and remanded.*

LEVINE and FORST, JJ., concur.

*     *     *

**Not final until disposition of timely filed motion for rehearing.**

---

[3] We do not construe the trial court's comment in the final judgment that "the Court . . . did not hear testimony regarding the manifest best interests of the child," to be a finding regarding whether TPR is in the manifest best interest of K.S. Because of the statutory presumption, it was not necessary for the GAL to present further evidence on the issue. The comment about the lack of testimony could have referred to either the GAL or M.H.